600 A.2d 633

**James A. SHEEHAN, Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (SUPERMARKETS GENERAL and Alexsis, Inc.), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted Sept. 6, 1991.

Decided Nov. 27, 1991.

626

Allen M. Metzger, for petitioner.

Frederick J. Gentile, for respondents.

Before COLINS and PELLEGRINI, JJ., and BARBIERI, Senior Judge.

PELLEGRINI, Judge.

James Sheehan (Claimant) files a Petition for Review appealing an Order of the Workmen's Compensation Appeal Board (Board) affirming a Referee's Decision granting the Petition for Suspension (Suspension Petition) of Supermarkets General (Employer).

On May 8, 1985, Claimant, while working in the course of his employment as a grocery clerk with the Employer, injured his back for which he received workmen's compensation benefits. On July 4, 1985, while recovering from the back injury, Claimant suffered a non-work-related heart attack. On November 21, 1985, Employer filed a Suspension Petition, alleging that Claimant partially recovered from his work-related back injury and was able to return to his previous job, modified by lifting limitations arising from his back injury, as of September 15, 1985. No consideration was given by the Employer, when making the referral, to any restrictions on Claimant's ability to perform the modified work as a result of his heart attack.

Hearings were held and the Referee issued a Decision granting Employer's Suspension Petition and suspending Claimant's benefits as of January 29, 1986. Claimant appealed the Referee's Decision to the Board which affirmed. The Board stated that "the fact that Claimant here had a subsequent heart attack is immaterial" to the issue of whether work is available, since this criteria only applies to the limitations arising solely from the work-related injury.

(Board's Order p. 4). Claimant now appeals the Board's Order.[1]

Our Supreme Court in *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction)*, 516 Pa. 240, 252, 532 A.2d 374, 380 (1987), set forth the following procedure governing the modification of benefits when the injured employee is able to return to work:

1.  The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce *medical evidence of a change in condition.*

2.  The employer must then produce *evidence of a referral* (or referrals) to a then-open job (or jobs), *which fits in the occupational category for which the claimant has been given medical clearance, e.g., light duty, sedentary work, etc.*

3.  The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4.  If the referral fails to result in a job, then the claimant's benefits should continue. (Emphasis added.)

The Supreme Court in *Kachinski* went on to emphasize that both the employer and employee must act in good faith:

Obviously, the viability of this system depends on the good faith of the participants. The referrals by the employer *must be tailored to the claimant's abilities,* (Citation omitted.), *and be made in a good faith attempt to return the injured employee to productive employment,* rather than a mere attempt to avoid paying compensation.

*Kachinski,* 516 Pa. at 252, 532 A.2d at 380. (Emphasis added.)

1.  Our scope of review is limited to determining whether any finding of fact is not supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights were violated. *Cashmark v. Workmen's Compensation Appeal Board (Great A & P Tea Company),* 135 Pa.Commonwealth Ct. 464, 580 A.2d 1189 (1990).

Claimant does not dispute the Referee's finding that Claimant has at least partially recovered from his prior work-related back injury. (Referee's Finding of Fact (R.F.F.) # 's 5, 7). Claimant, however, contends that the Referee committed several errors by finding that the Employer satisfied the second criteria of the *Kachinski* test that a referral was made to work available within his physical limitations. We will discuss each of the alleged errors *in seriatim.*

## A.

Claimant contends that the Referee erred in finding that the Employer met its burden of showing that he received notice of the job referral which he claimed he never received. Claimant argues that the only proof offered by the Employer of the referral was a letter written by the Employer which was insufficient to establish that the referral had been mailed.

■ Under *Kachinski,* the Employer must show that Claimant received notice of an available job referral. *Kachinski,* 516 Pa. at 252, 532 A.2d at 380. *See also Todloski v. Workmen's Compensation Appeal Board (Supermarket Service Corp.),* 115 Pa.Commonwealth Ct. 138, 140, 539 A.2d 517, 518 (1988). When Claimant denies receipt of the referral, the "mailbox rule" becomes applicable. *See e.g., Workmen's Compensation Appeal Board v. Ferrick, Inc.,* 23 Pa.Commonwealth Ct. 591, 353 A.2d 490 (1976).

Under the mailbox rule, proof that a letter was properly mailed raises a rebuttable presumption that the mailed item was, in fact, received. *Paul v. Dwyer,* 410 Pa. 229, 188 A.2d 753 (1963); *Department of Transportation v. Brayman Construction Corp.—Bracken Construction Co.,* 99 Pa.Commonwealth Ct. 373, 513 A.2d 562 (1986). Moreover, testimony denying the receipt of the item mailed does not, in and of itself, nullify the presumption that the letter was

received. *Berkowitz v. Mayflower Securities, Inc.,* 455 Pa. 531, 317 A.2d 584 (1974); *Brayman Construction Corp.*

In *Brayman Construction Corp.,* this court stated:

The [mailbox] rule applies only when there is evidence that the item was mailed. It is true that evidence of actual mailing is not required. Instead, 'when a letter has been written and signed in the usual course of business and placed in the regular place of mailing, evidence of the *custom* of the establishment *as to the mailing* of such letters is receivable as evidence that it was duly mailed.'

*Brayman Construction Corp.,* 99 Pa.Commonwealth Ct. at 380, 513 A.2d at 566. (Citations omitted.) (Emphasis in original.)

The Referee, in his findings, found that the Employer had notified Claimant of the position. (R.F.F. # 8). The Referee based this finding on the testimony of Jon P. Gardner, an assistant store supervisor for the Employer, who had worked in the personnel department at the time the referral was sent to Claimant. Gardner testified that he wrote and signed a letter on January 29, 1986, to Claimant, advising him that a position was available within Claimant's physical restrictions. (Notes of Testimony of March 15, 1988, (N.T.) p. 5). Gardner then testified that he did not personally mail letters, but customarily gives them to the secretaries to be mailed. (N.T. p. 8). Gardner's testimony is sufficient to show that the referral was written and signed in the usual course of business and placed in the regular place of mailing. Such evidence is sufficient to establish that the letter was duly mailed to allow the Referee to find that Claimant was notified.

## B.

Claimant also contends that the Referee erred by failing to consider the medical limitations caused by his subsequent non-work-related heart attack when determining whether he was medically cleared for the job. Claimant argues that, as

stated in the report of Henry S. Weider, Jr., M.D. to the Employer, he cannot be cleared for work until a cardiologist releases him for work, which has not been done. Claimant argues that the Employer failed to act in good faith by refusing to tailor the job to Claimant's abilities, given his condition following the heart attack.

Claimant points to Dr. Weider's letter to the Employer which, after clearing Claimant for work and outlining the lifting restrictions on his back, states:

> However, it is important to recognize that his return to work at this time is dependent upon clearance by his cardiologist, as will be the level of work permitted.

(Employer's Exhibit # 1, December 3, 1986).

It is well settled that in cases where an employer has shown that the claimant has fully recovered from a work-related injury, as opposed to partial recovery, the employer is not required to demonstrate that work was available to the claimant within his capabilities. *Callahan v. Workmen's Compensation Appeal Board (Bethlehem Steel)*, 132 Pa.Commonwealth Ct. 47, 571 A.2d 1108 (1990); *Fashion Prints v. Workmen's Compensation Appeal Board (Radler)*, 57 Pa.Commonwealth Ct. 250, 425 A.2d 1221 (1981). Moreover, in *Royster v. Workmen's Compensation Appeal Board (National Mines)*, 102 Pa.Commonwealth Ct. 338, 344, 518 A.2d 331, 334 (1986), where a claimant continued to suffer from a pre-existing condition, this court stated that:

> Where, as here, the employer offers testimony which the referee and the Board accept that claimant's work-related injury has ceased and *any physical problems still suffered from are causally related to a pre-existing condition,* it is not necessary that the employer prove that suitable alternative work is available. (Emphasis added.)

We find that this principle should apply equally to cases where the employer seeks a modification of benefits and where the claimant continues to suffer from the effects of a subsequent non-work-related injury, which is not caus-

ally connected to the prior work-related injury. Under *Kachinski,* the employer seeking a modification of benefits is only required to show that the claimant's work-related injury has improved. Once the employer has shown improvement, the employer must show that work is available within the claimant's "physical restrictions and limitations." *Kachinski,* 516 Pa. at 251, 532 A.2d at 379.

While in *Titusville Hospital v. Workmen's Compensation Board (Ward),* 122 Pa.Commonwealth Ct. 619, 552 A.2d 365 (1989), we held that a claimant's physical limitations were a factor to be considered when determining that work was available, we find these physical restrictions and limitations are those resulting from the work-related injury or those existing, or flowing from conditions already existing, prior to the injury. Physical limitations taken into consideration to determine job availability cannot be construed to include those physical limitations resulting from a non-work-related injury with no casual connection to the prior work-related injury nor which are related to physical limitations existing prior to the injury.

To construe it otherwise would require the employer to compensate an employee for injuries occurring away from the job during the period that the employee is recovering from his or her work-related injury. The intent of The Workmen's Compensation Act is to compensate only work-related injuries or those causally connected thereto. A referee need not take into consideration an injury suffered by a claimant which did not occur during the course of his or her employment nor was causally connected to the prior work-related injury when determining job availability.[2]

■ As previously stated, the Referee found that the Employer had shown that Claimant had partially recovered from his work-related injury. (R.F.F. # 's 5, 7). Claimant

---

**2.** Although the effects of a subsequent non-work-related injury are irrelevant, the employer in a modification proceeding must still show available work within the claimant's physical limitations which are casually related to the prior work-related injury. In the present case, the limitations on the Claimant caused by the work-related injury are not in dispute.

does not appeal this finding. There is also no dispute that Claimant's heart attack occurred while he was recovering at home from the work-related back injury. Claimant does not allege nor is there any evidence of a causal connection between the heart attack and the work-related back injury. Because the heart attack occurred while Claimant was not at work and there is no evidence that the heart attack was causally connected to the prior work-related injury, the Referee was correct in considering the residual effects of the heart attack to be irrelevant.

### C.

Claimant's final contention is that the Referee erred by finding that the referral, if received, contained sufficient information to constitute a referral as a matter of law. Claimant argues that the referral did not inform him that he was medically cleared for the position, nor did it provide a description of the job.

■ In *Four–Way Construction Co. v. Workmen's Compensation Appeal Board (Snyder)*, 113 Pa.Commonwealth Ct. 235, 239, 536 A.2d 873, 874–875 (1988), we stated that the "Employer must at least provide Claimant or his counsel a general job classification along with a basic description to give Claimant something to go on." The Employer must provide Claimant with all the necessary information to apply for a job opening. *Farkaly v. Workmen's Compensation Appeal Board*, 516 Pa. 256, 532 A.2d 382 (1987); *Todloski*, 115 Pa.Commonwealth Ct. at 141, 539 A.2d at 518. Moreover, Claimant must be made aware that he is medically sanctioned for the occupational category within which the referral falls. *Lukens, Inc. v. Workmen's Compensation Appeal Board (Williams)*, 130 Pa.Commonwealth Ct. 479, 486, 568 A.2d 981, 984 (1990).

■ The referral letter sent by the Employer and addressed to Claimant stated in full:

It will be possible for you to return to work in a limited capacity. The restrictions outlined by *your physician on*

*October 19, 1985,* can be observed with very little modification.

Your aisle assignment will be changed to meet the lifting requirement over the four to six week reindoctrination period.

Please contact the store for a return date.

(Employer's Exhibit # 2; March 15, 1988). (Emphasis added.)

Although the letter provided Claimant with a sufficient job description because Claimant was already aware of the job duties associated with his prior position, *See Braun Baking Co. v. Workmen's Compensation Appeal Board (Stevens),* 136 Pa.Commonwealth Ct. 499, 583 A.2d 860 (1990), the letter failed to communicate to Claimant that he was medically cleared for the position.

The referral alludes to the "restrictions outlined by *your* physician on *October 19, 1985 . . . ."* (Employer's Exhibit # 2; March 15, 1988). (Emphasis added.) However, the phrase "your physician" serves only to confuse Claimant since he was told by Dr. Weider that he also needed his cardiologists clearance to return to work. Claimant testified that *"[t]heir* doctor [Dr. Weider] said 'you could go back to work, but *your* doctor has the final say so.' "* (N.T. of March 27, 1986, p. 5). (Quotations added.) (Emphasis added.) Although there is conflicting evidence regarding whether Claimant was being treated at the time by a cardiologist,[3] the referral does not sufficiently allude to whose medical clearance the Employer was referring; Dr. Weider's or one from Claimant's cardiologist.

Adding to this confusion is the fact that there is no physician's report dated October 19, 1985. The physician's report referred to is apparently the September 19, 1985 report of Dr. Weider to the Employer. (Employer's Exhibit

---

**3.** Both the Employer and Claimant, in their respective briefs, state that Claimant did not have his own treating physician. However, Dr. Weider testified that Claimant told him that he was being treated by Steven Goldberg, M.D., a cardiologist who saw the Claimant monthly and was to give him a second stress test on September 24, 1985. (Dr. Weider's Deposition p. 12).

# 1; December 3, 1986). It is undisputed that Claimant never received a copy of Dr. Weider's report. Moreover, Claimant was never told that the statement of Dr. Weider concerning clearance by his cardiologist was irrelevant to his clearance to return to work.

Due to the fact that Claimant was told by Dr. Weider that he needed clearance by his own cardiologist, was never told that such clearance was irrelevant, and received a confusing letter regarding his medical clearance, Claimant was not properly notified that he was medically cleared for the job as required by *Lukens*.

Accordingly, we will reverse the Order of the Board.

## ORDER

AND NOW, this 27th day of November, 1991, the Order of the Workmen's Compensation Appeal Board dated February 22, 1991, is reversed.