**READING ANTHRACITE COMPANY and Old Republic Insurance Company, Petitioners,**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD (KONOPKA), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 20, 1998.

Decided April 9, 1999.

Michael J. Domanish, Scranton, for petitioner.

---

David S. Makara, Hazelton, for respondent.

Before DOYLE, J., SMITH, J., and NARICK, Senior Judge.

DOYLE, Judge.

Reading Anthracite Company (Employer) appeals an order of the Workers' Compensation Appeal Board, which reversed an order of a Workers' Compensation Judge (WCJ) and reinstated Robert Konopka's (Claimant) benefits.

Claimant was employed by Employer as an equipment operator, and on August 4, 1989, while repairing a dragline shovel, he sustained a work-related injury to his right knee. Employer issued a notice of compensation payable, and Claimant received total disability benefits for a closed period of time from August 4, 1989, to January 6, 1992. Thereafter, Claimant returned to work, and his benefits were suspended under the terms of a supplemental agreement. Upon his return to work, Claimant operated bulldozers, which included larger and newer bulldozers that could be operated by hand controls alone, as well as older and smaller bulldozers that also utilized foot controls. However, Claimant's physician told him that he should avoid activities that could aggravate his knee condition such as carrying, lifting, or climbing.

On September 11, 1993, while disembarking from a small bulldozer, Claimant slipped and jammed his right knee. Claimant continued to work from September 11th through September 15th; however, on September 16th, Claimant stopped working because he underwent a heart catheterization and an angioplasty procedure, which had been scheduled since September 3rd in order to treat his non-work-related coronary artery disease. Claimant did not return to work thereafter.

On January 3, 1994, Claimant filed a reinstatement petition, alleging that, on September 11, 1993, he had "reinjured and/or aggravat[ed]" his right knee, the same knee that he had previously injured in August of 1989. He alleged that, on September 15, 1993, his knee injury forced him to stop working and that he has never been able to return to work. The petition was assigned to the WCJ, who conducted four hearings, from February 22, 1994, to February 28, 1995.

After Claimant's reinstatement petition was filed, the parties stipulated that

> the Petition for Reinstatement currently pending before [the WCJ], alleging that Claimant sustained a recurrence of his disability on September 11, 1993 resulting from a work related injury to his right knee which occurred on August 4, 1989, **shall be amended to the extent the Petition shall be treated as a Claim Petition alleging Claimant sustained a new injury to his right knee on September 11, 1993.**

(Exhibit C–3, Stipulation of Counsel; Reproduced Record (R.R.) at 208a.) (Emphasis added.) The WCJ found that, in light of the stipulation, the Claimant's petition *was* not to be treated as one requesting a reinstatement in the alternative and that Claimant was no longer asking for reinstatement with respect to the August 1989 injury.

At the hearing, Claimant testified as to the facts described above. Claimant also testified that he did not seek immediate medical attention for his knee, and, although he called his physician on September 13, 1993, Claimant's doctor did not examine his right knee until October 5, 1993. Further, when asked why he stopped working on September 15, 1993, Claimant explained that it was "because of the pain in my knee, and it started to get worse. I had to go for a heart catheterization." (Notes of Testimony (N.T.), 2/22/94, at 13; R.R. at 56a.)

Claimant also testified that his physician, Dr. Polidora, in October of 1993, released him to return to work with the restriction that he only operate the bulldozers with hand controls and that do not require repetitive motions of the feet. Claimant stated that he contacted Employer in mid-October of 1993 and informed Employer that he would return to work if he could operate the large bulldozer only. Employer, however, never responded to Claimant.

Claimant introduced the testimony of Frank Polidora, M.D. who opined that Claimant sustained a new injury, described as an

"axial loading injury," to his knee on September 11, 1993. He further stated that Claimant had severe progressive and degenerative arthritis in his right knee, which was caused by the original August 4, 1989 injury and was worsened by the September 11, 1993 injury. Dr. Polidora opined that the September 11th injury rendered Claimant unable to work. However, on cross-examination, Dr. Polidora testified that Claimant's ability to return to work was contingent on his cardiac condition.

Dr. Polidora also drafted a written report, dated October 5, 1993, wherein he concluded that Claimant was able to return to work with the restriction that he only operate large equipment which does not require repetitive foot motions, but was not working because of his coronary artery disease.

Employer presented the testimony of Dr. Sanford Sternlieb, an orthopedic surgeon, who concluded that Claimant did not suffer a new injury, but rather was experiencing a continuing worsening of knee-related problems due to the original 1989 injury. He determined, as of his July 21, 1994 examination, that Claimant's knee injury did not prevent him from performing his job as a bulldozer operator, so long as he was not required to do a significant amount of standing, walking, or climbing stairs or ladders. Dr. Sternlieb further noted that Claimant was capable of working in a job where he would be seated.

Claimant's cardiologist, Dr. Bryan Kluck, testified as to Claimant's coronary artery disease. He explained that Claimant underwent several procedures before the one performed on September 16, 1993: an angioplasty in June of 1992; catheterization in January of 1993; and an experimental Rotoblader procedure in April of 1993. Dr. Kluck opined that, from a cardiovascular view, Claimant cannot return to work. Dr. Kluck refused to give any opinion on Claimant's knee problems, but noted that Claimant's September 16, 1993 hospital discharge summary did not indicate that Claimant suffered a new knee injury.

After considering the above evidence, the WCJ issued a decision denying Claimant benefits. The WCJ accepted the opinion of Dr. Sternlieb and found as fact that Claimant did not suffer a new injury at all, but instead suffered a recurrence of his 1989 injury on September 11, 1993. Accordingly, the WCJ determined that Claimant did not sustain his burden of proof that he suffered a new knee injury, in the form of an aggravation, in September of 1993.

Furthermore, although the WCJ concluded that Claimant had waived the reinstatement issue, the WCJ found that the September 11th recurrence of Claimant's knee injury made it impossible for him to perform all the job duties that he was doing before that date, in particular, that Claimant was no longer able to operate the small bulldozers after September 11th. The WCJ held that Claimant's benefits should not be reinstated, however, because all of Claimant's wage loss was connected to the heart disease and not to any work-related injury.

Claimant appealed to the Board, which reversed the WCJ. The Board held that the WCJ erred in not reinstating Claimant's total disability benefits, because the evidence established that Claimant could not do his job due to a recurrence of his original work-related injury. This appeal by Employer followed.

On appeal, Employer contends that Board erred in reversing the WCJ and reinstating total disability benefits because (1) all of Claimant's disability was caused by the non-work-related cardiac condition, and not by any work-related injury, and (2) the Board ignored substantial evidence relied on by the WCJ which established that Claimant's disability was related to the cardiac condition.

Initially, we observe that Employer does not argue that Claimant is not entitled to have his benefits reinstated for the reason that Claimant waived that argument by stipulating that his reinstatement petition would be treated as a claim petition. Nor does Employer argue that the Board erred in reaching the reinstatement issue because it was so waived. Accordingly, we conclude that Employer has, in turn, waived this argument; in effect, Employer has waived the waiver.

■ Because Claimant's benefits were suspended, to have his benefits reinstated, Claimant was required to prove that, through no fault of his own, his earning power was once again affected by his disability and that the disability which gave rise to his original claim continues. *Pieper v. Ametek–Thermox Instruments Division*, 526 Pa. 25, 584 A.2d 301 (1990).

This court has encountered situations in suspension cases where claimants who had sustained work-related injuries were subsequently disabled by non-work-related conditions. In *Sheehan v. Workmen's Compensation Appeal Board (Supermarkets General)*, 143 Pa.Cmwlth. 624, 600 A.2d 633 (1991), *petition for allowance of appeal denied*, 530 Pa. 663, 609 A.2d 170 (1992), the claimant sustained a work-related injury to his back and received workers' compensation benefits. But, while recovering from the back injury, the claimant sustained a non-work-related heart attack that rendered him totally disabled. The claimant, however, had partially recovered from his back injury and was able to return to his job as a grocery clerk, limited by lifting restrictions. The employer offered claimant modified work, but gave no consideration to claimant's heart condition. After the claimant did not return to work, the employer filed a suspension petition. The petition was granted by a referee and affirmed by the Board.

On appeal, we were presented with the issue of whether Claimant's non-work-related heart condition was relevant when determining whether Claimant was medically able to return to work. We held that the employer need not take into consideration claimant's non-work-related condition, reasoning as follows:

Physical limitations taken into consideration to determine job availability cannot be construed to include those physical limitations resulting from a non-work-related injury with no causal connection to the prior work-related injury nor which are related to physical limitations existing prior to the injury.

*Sheehan*, 600 A.2d at 637. Furthermore, we stated that the effects of a subsequent non-work-related injury are not relevant, and an employer is required to show that work is available within a claimant's limitations that are causally connected to the prior work-related injury.

We applied the *Sheehan* analysis in *Schneider, Inc. v. Workers' Compensation Appeal Board (Bey)*, 713 A.2d 1202 (Pa. Cmwlth.1998), *appeal granted*, —— Pa. ——, —— A.2d —— (No. 500 W.D. Alloc. Dkt.1998, January 13, 1999). The claimant in *Schneider* was receiving compensation for a work-related back injury when he suffered a non-work-related head injury, causing brain damage and paralysis, that rendered him totally and permanently disabled. The claimant's work-related disability had improved to the point that he could do light-duty work, but his non-work-related disability prevented him from working at all. Accordingly, we considered the issue of whether the employer was required to demonstrate job availability for purposes of suspending the claimant's benefits, even though the claimant's head injury prevented him from ever working again. We held, following *Sheehan*, that, because the claimant was partially disabled from his work injury and had not been released to his time-of-injury job, the employer was obliged to demonstrate job availability within the limits of his work-related injury or prove a change in earning power, despite the fact that the claimant was totally disabled by the non-work-related condition.

■ In the present case, it is undisputed that Claimant is totally disabled by his non-work-related heart disease. However, in light of *Sheehan* and *Schneider*, the fact that Claimant is totally disabled by a non-work-related disease, does not necessarily disqualify Claimant for benefits. In our view, Claimant would be entitled to a reinstatement of benefits if he can show that his earning power is once again affected by his disability, and Employer did not demonstrate that work was available within his restrictions.

The WCJ found that Claimant sustained a recurrence of his original work-related injury to his right knee on September 11, 1993. Employer's expert, Dr. Sternlieb, whose opinion was accepted as most credible by the WCJ, indicated that Claimant's knee problem was getting worse and that Claimant was not

disabled from performing his job as a bull-dozer operator. However, after examining Claimant, Dr. Sternlieb recommended that work restrictions be imposed. He opined that:

I felt he could do some work if it didn't require him to do any significant amount of standing or walking or going up or down steps or ladders. If he could do a job in the seated position, I felt he would be able to do it.

(Deposition of Dr. Sternlieb at 24; R.R. at 242a.) On cross-examination Dr. Sternlieb further stated:

Q.... [A]s of October 5th [,1993], Dr. Polidora was of the opinion that ... should [Claimant] return to work, he should work only on a large machine where he does not have to use his feet for repetitive motions. Would you agree with me?

A. Yes, that's what he said.

Q. So Dr. Polidora's restrictions are not that dissimilar from your restrictions as of the time you saw him?

A. Well, I think that he has less of a restriction than I do.

. . . .

Q.... [D]o you think that Dr. Polidora's restriction of operating the large dozers only would have been a reasonable restriction back on October 5th of 1993?

A. Probably.

(Deposition of Dr. Sternlieb at 32, 35; R.R. at 250a, 253a.)

In light of the above opinion, we must conclude that Claimant's work restrictions, and thus his disability, increased after Claimant's September 1993 recurrence. Dr. Polidora testified that, in January of 1992, he returned Claimant to work with restrictions—namely that Claimant was permitted to operate a bulldozer but was to avoid "strenuous work, no laboring, or any kind of climbing type situations, or heavy lifting, or anything of that sort." (Deposition of Dr. Polidora at 11, R.R. at 155a.) (WCJ opinion, Finding of Fact No. 9.) But, after September of 1993, Dr. Sternlieb placed further limitations on Claimant, restricting him from significant standing, walking, climbing and stating that Claimant could perform a job in a seated position. Dr. Sternlieb's restrictions, in our view, are greater restrictions than those originally imposed by Dr. Polidora in 1992. And, Dr. Sternlieb did not disagree with Dr. Polidora's opinion, expressed in the October 5, 1993 report, that Claimant should operate the large machines with hand controls only.

Dr. Sternlieb's opinion as to Claimant's restrictions is consistent with the WCJ's finding that Claimant's knee pain, after September 11, 1993, would prevent him from being able to perform all the job duties he was doing before that date, pointing, in particular, to Claimant's inability to operate the smaller bulldozers after September of 1993.

We note that the record is devoid of any evidence that Employer ever offered Claimant light-duty work within the restrictions imposed by Dr. Sternlieb. We further note that Claimant testified that he asked Employer in October of 1993 to provide him with work running the large bulldozer only and that Employer did not respond, and there is no evidence in the record that Employer provided Claimant with work within his restrictions.

Therefore, because Claimant was placed under greater work restrictions as a result of the September 11th recurrence, and because Employer never demonstrated that work was available within Claimant's restrictions, the Board did not err in concluding that Claimant was entitled to a reinstatement of benefits.

Order affirmed.

## ORDER

NOW, April 9, 1999, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.