**STRUTHERS WELLS, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (SKINNER), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 23, 2009.

Decided March 12, 2010.

Bridget L. Smith, Pittsburgh, for petitioner.

Eric P. Betzner, Washington, for respondent.

BEFORE: McGINLEY, Judge, and BUTLER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Struthers Wells (Employer) petitions for review from an order of the Workers' Compensation Appeal Board (Board) that reversed the decision of a Workers' Compensation Judge (WCJ) that granted its Modification/Suspension Petition. We affirm.

Charles Skinner (Claimant) sustained an injury to his back in the course and scope of his employment in 1989. In 2004, Employer filed a Modification/Suspension Petition alleging that Claimant was released to sedentary work in regard to his work-related injury. It asserted that while Claimant remains totally and permanently disabled from performing any type of employment as a result of nonwork-related medical conditions, it is entitled to a suspension of benefits consistent with *Schneider, Inc. v. Workers' Compensation Appeal Board (Bey)*, 560 Pa. 608, 747 A.2d 845 (2000)(holding that an employer was entitled to a suspension of benefits absent a showing of job availability when the claimant sustained a nonwork-related head trauma that resulted in brain damage and paralysis precluding him from ever returning to the workforce). Employer filed a separate Modification Petition alleging, in the alternative, that Claimant was referred to an open position that fell within his physical capabilities and that he failed to follow up on that position in good faith.

Employer presented the testimony of Fiaz A. Choudhri, M.D., board certified in neurosurgery, who explained Claimant sustained a work-related back injury in 1989 when he was struck by a machine. Claimant's current back discomfort and cramps in the legs could be related to the work injury, but are influenced by a nonwork-related diabetic neuropathy. Diabetes caused circulation problems that necessitated Claimant having an aortofemoral bypass. Claimant also had nonwork-related problems with his heart. Per Dr. Choudhri, he had atrial fibrillation, chronic obstructive pulmonary disease, and high blood pressure. He had coronary artery disease with bypass grafting, hypertension, and congestive heart failure. Claimant had ulnar nerve compression on both sides. At the time of his final examination of Claimant in July of 2005, Claimant was using an oxygen tank. Dr. Choudhri stated that even if Claimant had no work-related back problems, he would be totally disabled. Dr. Choudhri testified that considering Claimant's work-related back condition only, Claimant was capable of sedentary work. He opined Claimant's prognosis is poor. Dr. Choudhri did recommend different medications to improve Claimant's function.

Dr. Choudhri agreed that having a coronary artery bypass does not mandate that a person is totally disabled the rest of his or her life. Dr. Choudhri acknowledged people with diabetic neuropathy can sometimes function in a work setting. None of Claimant's conditions, viewed in isolation, would preclude him from working.

Employer also presented the testimony of Drexel Brown, vocational case manager, who completed a vocational evaluation of Claimant utilizing available medical records and his background information. Mr. Brown reviewed the opinions of Dr. Chou-dhri and noted he precluded Claimant from performing any type of gainful employment. Mr. Brown recognized, however, that Dr. Choudhri, considering only Claimant's work-related back condition, cleared Claimant for sedentary work. Mr. Brown identified a sales associate position for the Salvation Army Thrift Store and a position as a desk clerk/night auditor at the Holiday Inn that fell within Claimant's work-related restrictions. Claimant, per Mr. Brown, made no contact with the Salvation Army. Mr. Brown said Claimant's counsel at the time informed him Claimant would not pursue the Holiday Inn position as he was hospitalized at the time he was to meet with this employer.

Claimant testified that he has been advised his back is beyond repair. He takes numerous medications. Some medications are for his back, while others are for his diabetes and heart issues. Claimant stated he had a triple bypass in 2001. He explained he has not been cleared to work by any of his doctors. Claimant agreed that he does some driving and cooking.

The WCJ found Claimant incredible. He credited Dr. Choudhri's testimony and the testimony of Mr. Brown. The WCJ concluded that Claimant's non-work-related medical conditions in and of themselves rendered Claimant totally disabled from his employment. The WCJ concluded that Employer established it is entitled to a suspension of benefits consistent with *Schneider*. In the alternative, the WCJ found that considering the work-related back injury only, Claimant failed to make a good faith effort in following through on the Salvation Army position he was referred to by Employer. The WCJ explained Claimant did not sufficiently establish an inability to pursue this position considering only his work-related injuries. Claimant appealed to the Board arguing that *Schneider* is not applicable to the

instant matter and that Employer was nonetheless precluded from obtaining a suspension of benefits as a result of its failure to provide him with a Notice of Ability to Return to Work consistent with Section 306(b)(3) of the Pennsylvania Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 512(3).[1]

■ The Board found that Employer could not obtain a suspension of benefits without first furnishing Claimant with a Notice of Ability to Return to Work. As there was no evidence of record that one was supplied, the Board was constrained to reverse the WCJ's decision. It added that even if Employer's evidence was sufficient to obtain a suspension under *Schneider* in all other respects, its failure to supply this document was fatal to its Petitions. Employer appeals.[2]

Employer argues on appeal that the Board erred in finding it was necessary to provide Claimant with a Notice of Ability to Return to Work in this instance. It asserts that the WCJ suspended Claimant's benefits based on the *Schneider* decision. Employer reiterates that the holding of *Schneider* is that where a claimant

cannot return to gainful employment as a result of a nonwork-related condition, an employer need not make a showing of job availability in order to suspend benefits. Consequently, it contends it need not supply the document required under Section 306(b)(3) of the Act.

Compliance with the provisions of Section 306(b)(3) of the Act is a threshold burden that must be met in order to obtain a modification or suspension of a claimant's workers' compensation benefits when a change in status is sought upon the receipt of medical evidence. *Allegis Group (Onsite) v. Workers' Compensation Appeal Board (Henry),* 882 A.2d 1 (Pa. Cmwlth.2005); *Burrell v. Workers' Compensation Appeal Board (Phila. Gas Works),* 849 A.2d 1282 (Pa.Cmwlth.2004). The clear purpose of Section 306(b)(3) is "to require the employer to share new medical information about a claimant's physical capacity to work and its possible impact on existing benefits." *Burrell,* 849 A.2d at 1287.[3]

When the claimant is totally disabled based on a nonwork-related condition but he also requires restrictions due to his work injury, case law has suggested the

---

1. Section 306(b)(3) of the Act provides:
   If the insurer receives medical evidence that the claimant is able to return to work in any capacity, then the insurer must provide prompt written notice, on a form prescribed by the department, to the claimant, which states all of the following:
   (i) The nature of the employe's physical condition or change of condition.
   (ii) That the employe has an obligation to look for available employment.
   (iii) That proof of available employment opportunities may jeopardize the employe's right to receipt of ongoing benefits.
   (iv) That the employe has the right to consult with an attorney in order to obtain evidence to challenge the insurer's contentions.
   77 P.S. § 512(3).

2. Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence and whether constitutional rights were violated. *Gentex Corp. v. Workers' Compensation Appeal Board (Morack),* 975 A.2d 1214 (Pa.Cmwlth.2009).

3. Claimant sustained his work injury in 1989. The Act was amended to require employers to supply injured workers with a Notice of Ability to Return to Work when they receive medical evidence of a change in condition in 1996. This amendment is procedural, however, and applicable to the instant matter. *Miegoc v. Workers' Compensation Appeal Board (Throop Fashions/Leslie Fay),* 961 A.2d 269 (Pa. Cmwlth.2008).

employer must make a showing of job availability consistent with *Kachinski v. Workmen's Compensation Appeal Board (Vepco Constr. Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), in order to modify or suspend benefits.[4] *Reading Anthracite Co. v. Workers' Compensation Appeal Board (Konopka)*, 728 A.2d 408 (Pa.Cmwlth. 1999). *See also Sheehan v. Workmen's Compensation Appeal Board (Supermarkets Gen.)*, 143 Pa.Cmwlth. 624, 600 A.2d 633 (1991)(holding the fact that claimant incurred a nonwork-related heart attack is immaterial to determining whether the employer made a showing of job availability when the claimant's work-related condition had partially resolved).

It has been held, however, that an employer does not have to make a showing of job availability when the claimant has regained the ability to return to his pre-injury job considering his work injury only but remains totally disabled due to a nonwork-related injury. *Carpentertown Coal & Coke Co. v. Workmen's Compensation Appeal Board (Seybert)*, 154 Pa.Cmwlth. 408, 623 A.2d 955, *petition for allowance of appeal denied*, 535 Pa. 640, 631 A.2d 1011 (1993); *See also USX Corp. v. Workmen's Compensation Appeal Board (Hems)*, 167 Pa.Cmwlth. 19, 647 A.2d 605 (1994)(holding that an employer was not required to show job availability when the claimant's work related thumb injury was sufficiently healed to allow him to return to his time of injury job but was unable to work due to a nonwork-related brain abscess that result-ed in falling, misjudging distances, and diminished coordination of the right extremities).

The Supreme Court, in *Schneider*, found the language in *Carpentertown* and *USX Corp.* to be somewhat problematic. In a footnote, it stated:

[T]he analysis of the Commonwealth Court in these decisions is problematic in two respects. First, we are troubled that these decisions create an alternative standard for an employer seeking a suspension of benefits that undermines our decision in *Kachinski*. *Instead of presenting evidence as to job availability, these decisions allow for a suspension of benefits when an employer can point to a nonwork-related factor that is causing the employee's loss of earnings. Establishing job availability pursuant to Kachinski remains the proper standard to govern situations where the employer seeks to prove that an employee's loss of earnings is attributable to a nonwork-related factor.* If an employer can establish that there is a job available that complies with an employee's remaining work-related physical injuries, and the employee fails to return to or accept this position because of nonwork-related factors, the employer has proven that the employee's loss of earnings is attributable to something other than the work-related injury. Second, the Commonwealth Court's decisions appear to be founded on the premise that an employ-

---

4. The Supreme Court, in *Kachinski*, set forth the following guidelines to govern employers' petitions seeking to modify an employee's benefits:

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, e.g., light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then claimant's benefits should continue. *Kachinski*, 516 Pa. at 252, 532 A.2d at 380.

ee who can return to his or her pre-injury position can be treated differently than an employee who can return to a position other than his or her pre-injury position ... [S]uch a premise is erroneous ... (Emphasis added).

*Schneider*, 560 Pa. at 617, 747 A.2d at 849, fn. 9.

The claimant, in *Schneider*, sustained a work-related injury to his head and neck while working as a boilermaker. His injuries were accepted in an NCP. While he was receiving total disability, the claimant was involved in an altercation whereupon he suffered a stab wound to the head. As indicated above, this incident resulted in brain damage and paralysis. The employer filed a suspension petition alleging that the claimant's disability was the result of a nonwork-related head trauma and that the nonwork-related injuries had the practical effect of removing him from the labor market. There was no dispute that the claimant's work-related injuries precluded him from returning to any level of employment. Ultimately, the WCJ granted the employer's suspension petition and found the employer did not need to make a showing of job availability consistent with *Kachinski* where the claimant was totally disabled by a nonwork-related injury.

The Board reversed. It determined that because the claimant could only return to sedentary or light-duty work in relation to his work-related injuries as opposed to being cleared to full duty, he continued to be at least partially disabled because of his work-related injuries. Therefore, consistent with *Sheehan*, the Board concluded that the employer had to produce evidence of a job that the claimant could perform considering his remaining work-related physical injuries and disregarding his nonwork-related physical injuries in order to succeed on its suspension petition. This Court affirmed the Board's order.

The Supreme Court reversed. It recognized that the precedent established in *Kachinski* was still viable. It further recognized, however, that in some limited instances it has allowed departure from strict application of the *Kachinski* guidelines. The Court stated it would be "absurd" to require a showing of job availability in *Schneider* because such a showing would be "irrelevant and fruitless." *Schneider*, 560 Pa. at 616–617, 747 A.2d at 849. It stated "[t]he circumstances surrounding [the claimant's] inability to return to work are tragic; however, requiring Schneider to develop a completely hypothetical position for [him] would simply belittle all the parties involved." *Schneider*, 560 Pa. at 617, 747 A.2d at 850.

The Court, in *Schneider*, acknowledged that its holding was based on the specific facts of the case. In the opinion's very first sentence, the Court stated "[t]he issue on appeal is whether an employer seeking a suspension of workers' compensation benefits must demonstrate job availability under *the distinct factual circumstances of this case.*" *Schneider*, 560 Pa. at 610, 747 A.2d at 845. Indeed, no less than four times in disposing of the appeal does the Supreme Court utilize the phrase "unique facts" in finding the circumstances of the case required deviation from the general rule espoused in *Kachinski*. The Court acknowledged that its holding was similar to the result reached in *Carpentertown* and *USX Corp.* only "to the extent that the Commonwealth Court's decisions recognized the futility of requiring a showing of job availability if the employee *can never return to work.*" *Schneider*, 560 Pa. at 617, 747 A.2d at 849, fn. 9.

■ Upon review of the aforementioned, we are inclined to agree with the Board. We are concerned that the WCJ

may have strained the limits of *Schneider* to find Employer was automatically entitled to a suspension in this matter as a result of the fact that he was totally disabled due to his nonwork-related conditions. While the Supreme Court in *Schneider* found a suspension of benefits was warranted absent a showing of job availability, it stressed that such an event should be the exception, not the rule. The Court explained that a suspension was the proper remedy in *Schneider* without the showing of job availability when the evidence showed the claimant was precluded from ever returning to work based on nonwork-related physical conditions. The claimant in that case was undoubtedly precluded from ever returning to work in that case due to brain damage and paralysis. His inability to return to the labor market at any point in the future was obvious and it was labeled "absurd" and "fruitless" to require the employer to make some hypothetical offer of employment to someone who could not possibly engage in a vocation.

Based on the credible testimony of Dr. Choudhri, it cannot be denied that Claimant in the instant matter is severely limited by his nonwork-related conditions. We do not take lightly Dr. Choudhri's statement that Claimant's prognosis is poor and that even if he did not have a work-related back injury, he would be precluded from returning to work based on, *inter alia,* his heart problems, poor circulation, and diabetes. That being said, we recognize that at least as of his July 14, 2004 testimony, Claimant was capable of appearing live and testifying before the WCJ. He acknowledged he does limited driving. He stated he cooks on occasion. Indeed, Dr. Choudhri even recommended different medications in hopes of improving Claimant's functionality. Claimant may never be capable of returning to the work-force in light of his nonwork-related conditions.

Perhaps, at some point, however, he may be able to return to some sedentary position considering the totality of his physical condition. We believe that it would be unduly cynical to analogize Claimant to the brain damaged, paralyzed claimant in *Schneider.*

The Supreme Court reiterated that notwithstanding the holdings in *Carpentertown* and *USX Corp.,* establishing job availability pursuant to *Kachinski* remains the proper standard where the employer seeks a modification or suspension of benefits. *Schneider.* If an employer can establish that there is a job available that complies with a claimant's work-related restrictions, and the claimant fails to return to or accept this position because of nonwork-related factors, the employer has proven that the loss of earnings is attributable to something other than the work-related injury. *Id.* Consequently, Employer was required to make a showing of job availability in this instance.

Regardless, both *Henry* and *Burrell* instruct that a claimant must be provided with a Notice of Ability to Return to Work in order for an employer to obtain a modification or suspension of a claimant's benefits when a change is sought upon the receipt of medical evidence. This is a threshold burden that Employer must satisfy in order to change Claimant's disability status. *Henry; Burrell.* Whether a showing of job availability is required or not, the fact remains Employer sought a modification of benefits based on the fact that it received an opinion from Dr. Choudhri that Claimant was now capable of returning to sedentary work when considering his work-related conditions only. Section 306(b)(3) of the Act, provides that when an employer receives medical evidence that the claimant is able to return to work in any capacity, then it must provide prompt written notice to the claimant stating: (1) the nature of his physical condi-

tion or change of condition; (2) that he has an obligation to look for available employment; (3) that proof of available employment opportunities may jeopardize his right to receipt of ongoing benefits; and (4) that he has the right to consult with an attorney in order to obtain evidence to challenge the employer's position. But for the second prong of Section 306(b)(3) of the Act, the information contained in the Notice of Ability to Return to Work, had one been provided, would be useful to Claimant in considering his options as they relate to his work injury.

As found by the Board, there is no evidence in the record indicating that

Claimant was provided with a Notice of Ability to Return to Work. Consequently, we must affirm the Board's order.[5]

### ORDER

AND NOW, this 12th day of March, 2010, the order of the Workers' Compensation Appeal Board is affirmed.

---

5. Employer, in its brief, contends that Claimant waived the issue of its failure to provide him with a Notice of Ability to Return to Work because he did not raise the issue to the WCJ before it proceeded to litigate its Petitions. As stated above, however, providing a claimant with a timely Notice of Ability to Return to Work is part of Employer's "burden" when it seeks a modification of benefits based on a change in medical condition. Claimant appealed to the Board arguing Employer failed to meet its burden to entitle it to a modification or suspension of benefits. We do not believe Claimant was required to set forth Employer's evidentiary deficiency until after the WCJ issued his decision when at that time he became aggrieved. Claimant, at that time, sufficiently preserved its argument for appeal. Issues are preserved when they are raised in appeal documentation filed with the Board. *Hendricks v. Workers' Compensation Appeal Board (Phoenix Pipe & Tube)*, 909 A.2d 445, 460, fn. 12 (Pa.Cmwlth.2006).