# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| R.H., | : | |
| Petitioner | : | **SEALED CASE** |
| | : | |
| v. | : | No. 724 C.D. 2018 |
| | : | Submitted: February 11, 2019 |
| Department of Human Services, | : | |
| Respondent | : | |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE ROBERT SIMPSON, Judge
          HONORABLE P. KEVIN BROBSON, Judge


**OPINION**
**BY JUDGE SIMPSON**                    **FILED: March 8, 2019**


In this sealed child abuse expunction case, R.H. (Petitioner) petitions for review of an order of the Department of Human Services (Department), Bureau of Hearing and Appeals (BHA), that adopted a recommendation by an Administrative Law Judge (ALJ) to dismiss Petitioner's request for an appeal *nunc pro tunc* (late appeal by permission) from an indicated report of child abuse. The ALJ found Petitioner's testimony, that he did not receive the mailed notice, insufficient to nullify the presumption of receipt under the mailbox rule. The ALJ also found that Petitioner learned of the indicated report in the late summer of 2017 and failed to act within a short time of having an opportunity to address the untimeliness. Petitioner contends the BHA erred in determining that (1) he was not entitled to an appeal *nunc pro tunc* based on the ALJ's application of the mailbox rule; and (2) no basis existed for allowing Petitioner's appeal *nunc pro tunc*. For the following reasons, we reverse and remand to the BHA for further proceedings on the merits of Petitioner's appeal.

## I. Background

The ALJ found the following facts. In early February 2017, the Bedford County Children and Youth Services, now known as Children, Youth and Families (County CYF), filed an indicated report of child abuse with the ChildLine and Abuse Registry (ChildLine) based on alleged sexual abuse of a minor in Kentucky that occurred approximately nine years earlier. On February 7, 2017, ChildLine mailed Petitioner a letter notifying him that he is listed in the statewide database for child abuse as a perpetrator in an indicated report of child abuse. ALJ Op., 4/27/18, Finding of Fact (F.F.) No. 1. The notification letter advised Petitioner of the right to request that the indicated report be amended or destroyed. F.F. No. 2. The letter also informed Petitioner that the request must be made within 90 days of the February 7 mailing date of the notice. Id.

ChildLine sent the letter to Petitioner at "Hammond Hill Road, Fishertown PA, 15539." F.F. No. 3. The U.S. Postal Service did not return the letter as undeliverable. F.F. No. 4. On December 21, 2017, Petitioner, through his attorney (Counsel), faxed an appeal of the February 7 notification letter. F.F. No. 5.

At the hearing, conducted via telephone, Petitioner testified he resided at his Hammond Hill Road address for approximately five years, and he receives mail there. ALJ's Hr'g, Notes of Testimony (N.T.), 4/3/18, at 13; Reproduced Record (R.R.) at 52a. Petitioner acknowledged being interviewed by the County CYF and the Pennsylvania State Police regarding allegations of child abuse of a particular child. N.T. at 14; R.R. at 53a. However, Petitioner never received a

2

letter from the County CYF or the Department indicating the disposition of the investigation. Id.

Petitioner testified he frequently contacted Counsel regarding the results of the investigation, but heard nothing. N.T. at 15; R.R. at 54a. Petitioner stated that if he would have received anything, he would have immediately given the notice to Counsel. N.T. at 16; R.R. at 55a.

On cross-examination, Petitioner confirmed that he first learned of the indicated report when his employer, a church with a preschool, ran a background check on him and notified him of the indicated report. N.T. at 17; R.R. at 56a. Petitioner recalled that this occurred during the late summer, but he could not remember the exact date. N.T. at 19; R.R. at 58a. Petitioner acknowledged he could have checked the Department's website at any time. N.T. at 18; R.R. at 57a. In fact, that is what Petitioner did; he checked the website and notified Counsel, who advised him he should be getting something in the mail from Harrisburg soon. Id. Counsel indicated that he was shocked to learn what was going on and that Petitioner did not receive an appeal letter. Id.

Petitioner further testified that in the "fall" he contacted "Harrisburg" and a lady advised him he could appeal. N.T. at 20; R.R. at 59a. The lady provided Petitioner with a phone number to call for information to start the appeal. Id. Petitioner immediately gave that information to Counsel. Id.

The ALJ also questioned Counsel regarding the delay between late summer and the December 21 appeal. Counsel stated that he thought it was early fall when Petitioner learned of the indicated report. See N.T. at 29-30; R.R. at 68a-69a.

Addressing the timeliness issue, the ALJ noted, pursuant to Section 6341(a)(2) of the Child Protective Services Law (CPSL), a named perpetrator in an indicated report of child abuse has 90 days from "being notified of the status of the report" to request an administrative review or an appeal and hearing to amend or expunge the indicated report. 23 Pa. C.S. §6341(a)(2). Because ChildLine mailed the notification letter to Petitioner on February 7, 2017, Petitioner needed to file an appeal by May 8, 2017. However, Petitioner faxed his appeal on December 21, 2017. Therefore, the ALJ found Petitioner's appeal untimely. ALJ Op. at 4.

In determining whether sufficient grounds existed for Petitioner to appeal *nunc pro tunc*, the ALJ recognized that a late appeal may be permitted only where the delay in the appeal was caused by extraordinary circumstances involving fraud or some breakdown in the administrative process, or non-negligent circumstances related to the appellant, his counsel or a third party. J.C. v. Dep't of Pub. Welfare, 720 A.2d 193 (Pa. Cmwlth. 1998). A person seeking permission to file an appeal *nunc pro tunc* has the burden of establishing (1) he filed the appeal within a short time after learning of and having an opportunity to address the untimeliness; (2) the elapsed period of time is of short duration; and (3) the respondent is not prejudiced by the delay. Id.

4

The ALJ observed that under the mailbox rule, proof that a letter was properly mailed raises a rebuttable presumption that the mailed item was, in fact, received. Sheehan v. Workmen's Comp. Appeal Bd. (Supermarkets Gen.), 600 A.2d 633 (Pa. Cmwlth. 1991). Once established, testimony denying receipt of the item mailed does not, by itself, nullify the presumption that the mailed item was received. Id. However, the mailbox rule is applicable only where there is evidence that the item was actually mailed. Id. "[W]hen a letter has been written and signed in the usual course of business, and placed in the regular place of mailing, evidence of the *custom* of the establishment *as to the mailing* of such letters is receivable as evidence that the item was duly mailed." Id. at 636 (citation omitted).

Applying the mailbox rule here, the ALJ noted that ChildLine sent the notification letter to Petitioner's correct address on February 7, 2017, and that the U.S. Post Office did not return it as undeliverable. As such, the ALJ observed, a rebuttable presumption arose that Petitioner received the mailed notice. ALJ Op. at 4.

Although Petitioner testified he did not receive the mailed notice, the ALJ observed that such testimony does not, in and of itself, nullify the presumption of receipt. Also, the ALJ noted Petitioner testified that he had no issues receiving mail at home. Id. Therefore, the ALJ determined Petitioner failed to present sufficient evidence to establish that his delay in filing the appeal resulted from a breakdown in the administrative process or by non-negligent circumstances related to Petitioner or Counsel. Id.

The ALJ further determined that Petitioner failed to establish that he filed his appeal within a short time after learning of the indicated report. Petitioner testified he immediately notified Counsel after he learned through his employer in late summer that a background check discovered that he was listed as a perpetrator in an indicated report of child abuse. However, Petitioner did not file an appeal until December 21, 2017, several months later. Id.

The ALJ also noted that Counsel stated that he spoke with an individual at the County CYF regarding the timeline for receiving notice of disposition of the child abuse investigation and was told it could take three to six months for Petitioner to receive notice of the results. However, the ALJ observed, the record contains no evidence showing that Counsel made any attempt to contact ChildLine to inquire as to whether notice had been sent. Id.

Finally, although Petitioner obtained some information in the late fall as to how to appeal, several months passed since he first learned of the indicated report in late summer. ALJ Op. at 5. Therefore, the ALJ reasoned, even if Petitioner did not actually receive the February 7, 2017, notification letter, he failed to act within a short time of having an opportunity to address the untimeliness.

Accordingly, the ALJ concluded Petitioner did not establish sufficient grounds for an appeal *nunc pro tunc* on the merits. Consequently, the ALJ recommended the dismissal of Petitioner's appeal as untimely.

Thereafter, the BHA adopted the ALJ's recommendation and adjudication in its entirety. Petitioner sought reconsideration and filed a petition for review in this Court.[1] Petitioner's request for reconsideration was denied by operation of law under 1 Pa. Code §35.241(d) and (e) when the 30-day appeal period expired. See Department Order, 6/8/18; R.R. at 38a.

## II. Issues

Petitioner essentially raises two issues for our review. Petitioner asserts the BHA erred in determining he was not entitled to an appeal *nunc pro tunc* based on the ALJ's application of the mailbox rule. In addition, Petitioner argues the ALJ erred in determining no basis existed for allowing Petitioner's administrative appeal *nunc pro tunc*.

## III. Discussion
### A. Mailbox Rule
### 1. Argument

Petitioner contends the BHA erred in denying his request for an appeal *nunc pro tunc* because the Department failed to provide sufficient evidence at the hearing to support the application of the mailbox rule. Petitioner asserts the hearing record does not contain any testimony or evidence indicating that the notification letter was written in the ordinary course of business, and was placed in the regular place of mailing, as is customary with the Department.

---

[1] Our review of a BHA adjudication is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether the BHA erred as matter of law or whether the Department violated a party's constitutional rights. C.E. v. Dep't of Pub. Welfare, 97 A.3d 828 (Pa. Cmwlth. 2014).

7

Petitioner acknowledges the certified record contains an incomplete copy of the purported notification letter, first page only, R.R. at 13a, and an affidavit of mailing signed by a clerical supervisor, R.R. at 14a, that Petitioner asserts was added to the record *after the hearing*. To that end, the Department did not offer any testimony or evidence during the hearing on this issue. In particular, the clerical supervisor who signed the affidavit did not testify, and her affidavit does not indicate who was responsible for mailing the notification letter or the manner in which the outgoing mail is generally processed.

Thus, Petitioner argues the record is insufficient to trigger application of the mailbox rule. See Dep't of Transp. v. Brayman Constr. Co., 513 A.2d 562 (Pa. Cmwlth. 1986) (mailbox rule inapplicable where Department of Transportation failed to present testimony from the author of the letter, and no one attested to the fact that the letter was placed in the regular place of mailing). Therefore, Petitioner asserts any delay in his request for an administrative review, or appeal and hearing, should be assessed against the Department.

**2. Analysis**

To begin, we recognize that the failure to file a timely appeal of an administrative agency's decision creates a jurisdictional defect. C.E. v. Dep't of Pub. Welfare, 97 A.3d 828 (Pa. Cmwlth. 2014). Consequently, an extension of time to file an appeal cannot be granted as a matter of grace or mere indulgence. Id. An appeal *nunc pro tunc* may be allowed where the delay in filing the appeal was caused by extraordinary circumstances involving fraud or a breakdown in the administrative process, or non-negligent circumstances related to the appellant, his

8

counsel, or a third party.  H.D. v. Dep't of Pub. Welfare, 751 A.2d 1216 (Pa. Cmwlth. 2000).  The question of whether the appellant established entitlement to an appeal *nunc pro tunc* is a legal conclusion to be drawn from the evidence and is fully reviewable on appeal.  Id.

Petitioner first contends the Department failed to provide sufficient evidence at the timeliness hearing to support application of the mailbox rule.  In light of our recent decision in L.H. v. Department of Human Services, 197 A.3d 310 (Pa. Cmwlth. 2018), we must agree.

In L.H., we acknowledged that in order for the mailbox rule to apply, there must be some evidence that the notice was mailed.  In other words, until there is proof that the agency mailed the letter, there can be no presumption that the appellant received it.  Id.  In L.H., although the certified record contained an affidavit of mailing, we observed that the Department did not present any evidence at the hearing.  In that case, the Court specifically noted:

> There is an "**AFFIDAVIT OF MAILING**" in both the certified record and the reproduced record; however, it was not introduced at the hearing, as revealed after a thorough review of the transcript.  BHA Counsel admitted at oral argument that the Affidavit was not presented at the hearing and thus, it is not evidence this Court can rely upon in making its determination.  Further, as the ALJ explained: 'The hearing record remained open for five (5) business days [after the hearing] to allow for submission of post-hearing exhibits.  On September 11, 2017, the [ALJ] received exhibits A-1 through A-3 [L.H.'s exhibits] and the hearing was closed.' R.R. at 14a.

9

L.H., 197 A.3d at 314 n.5. Because there was no evidence of mailing, we determined no presumption of receipt was created. Id. Therefore, we held the ALJ's adjudication was not supported by substantial evidence. Id.

Similarly, in this case, the Department did not introduce the affidavit of mailing into the record at the hearing. When asked if he wanted to submit anything into evidence, the Department's attorney advised the ALJ that the only document he wished to make part of the record was the notice sent to Petitioner, which the ALJ already had in his file. See N.T. at 22-23; R.R. at 61a-62a. The ALJ requested that the Department's attorney provide a copy of the notification letter to Counsel. N.T. at 23; R.R. at 62a. The Department's attorney then stated that would be the only exhibit he would make part of the record. Id.

In addition, the ALJ's adjudication stated that neither party introduced any exhibits into the record. ALJ Op. at 1. In accord with our decision in L.H., we are constrained to hold that the mailbox rule is inapplicable in this case because there is no proof that the Department mailed the notification letter to Petitioner.

As such, the record does not support the ALJ's findings that: (1) ChildLine mailed Petitioner notice that he was listed on the statewide central register of child abuse as a perpetrator in an indicated report; (2) the notification letter instructed Petitioner that an appeal must be filed within 90 days; and (3) the notification letter was sent to Petitioner at his residential address. L.H. Therefore, because the Department failed to establish that it mailed the notification to

Petitioner, the ALJ erred in determining that Petitioner's appeal was not timely filed. Id.

## B. Grounds for *Nunc Pro Tunc* Relief

### 1. Argument

Petitioner also contends the circumstances in the present case warrant the allowance of his administrative appeal *nunc pro tunc*. More specifically, Petitioner argues his delay in requesting an appeal is not so extensive as to exhibit dilatory conduct.

Although Petitioner learned of the indicated report in the late summer of 2017, he never received a notification letter. Because Petitioner did not receive the notification letter, he did not receive the regular appeal form that is normally included with the notification letter. When Petitioner and Counsel contacted the County CYF after learning of the indicated report, they were told that the Department was experiencing delays in processing the reports, and that a delay of three to six months could be possible. Therefore, Petitioner waited for the standard notification letter to arrive.

Ultimately, Petitioner contacted someone in Harrisburg during the fall who advised him he could appeal and provided him with a phone number to call regarding the procedure to appeal. Thus, Petitioner contends the delay between the time he learned of his right to appeal and his appeal letter, dated December 21, 2017, was not so extensive as to justify the denial of his request for an administrative appeal *nunc pro tunc*.

11

## 2. Analysis

Section 6341(a)(2) of the CPSL, governing appeals from an indicated report of child abuse, provides (with emphasis added):

> (2) Any person named as a perpetrator, and any school employee named, in an indicated report of child abuse may, <u>within 90 days of being notified of the status of the report</u>, request an administrative review by, or appeal and request a hearing before, the secretary to amend or expunge an indicated report on the grounds that it is inaccurate or it is being maintained in a manner inconsistent with this chapter. The request shall be in writing in a manner prescribed by the [D]epartment.

23 Pa. C.S. §6341(a)(2).

Here, the ALJ noted, Petitioner testified he first learned of the indicated report of child abuse naming him as a perpetrator in the late summer of 2017 when his employer discovered the report in a background check and brought it to Petitioner's attention. N.T. at 17-19; R.R. at 56a-58a. Upon learning of the indicated report, Petitioner immediately contacted Counsel.

Petitioner further testified that he visited Counsel's office numerous times to see if Counsel "heard anything." N.T. at 15; R.R. at 54a. Counsel advised Petitioner that he contacted the County CYF and was told that "Harrisburg was backed up and that it should be three to six months, if not longer, before we get a response." N.T. at 15-16; R.R. at 54a-55a. Consequently, Counsel advised Petitioner to keep watching for notification from Harrisburg. N.T. at 18; R.R. at 57a. The Department did not notify Petitioner that he could appeal until someone in Harrisburg informed him that he could appeal the indicated report and gave him

12

a phone number to call for information regarding the appeal process. N.T. at 20; R.R. at 59a.

Given these circumstances, we must reject the ALJ's rationale that the 90-day statutory appeal period expired by May 8, 2017. In light of the absence of proof of mailing of the February 2017 notification letter, at the earliest, the 90-day statutory appeal period should have commenced when Petitioner admitted he was notified of the status of the report by his employer sometime in the late summer of 2017. Calculating the 90-day appeal period as commencing in this imprecise time frame, it is not clear that the December 21, 2017, appeal was greatly delayed, or even untimely.

Additionally, "a person whose name is entered into the ChildLine Registry as a perpetrator of child abuse is entitled to a clear and unequivocal notice of his or her right to a post-deprivation hearing as a matter of due process." D.C. v. Dep't of Human Servs., 150 A.3d 558, 570 (Pa. Cmwlth. 2016) (en banc). Anything less constitutes a breakdown in the administrative process. Id. The current record does not reveal whether the notification Petitioner received from his employer in the late summer of 2017 satisfied this requirement for the form of notification.

Here, Petitioner testified he was informed of his right to appeal the indicated report sometime in the "fall" of 2017, when he contacted "Harrisburg," and a lady advised him he could appeal. N.T. at 20, R.R. at 59a. Calculating the

90-day appeal period as commencing in this imprecise time frame, it is not clear that the December 21, 2017, appeal was greatly delayed, or even untimely.

Consequently, because the Department could not establish that it actually mailed the notification letter to Petitioner in February 2017, we hold Petitioner is entitled to an administrative appeal *nunc pro tunc* on the merits. D.C.; H.D. In reaching this result, we observe that the Department did not argue at the hearing that it would suffer prejudice if Petitioner was permitted to appeal.

## IV. Conclusion

For the above reasons, the order of the BHA is reversed, and this matter is remanded for further proceedings consistent with this opinion.


_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

R.H.,                   :
         Petitioner     :    **SEALED CASE**
                  :
       v.                   :    No. 724 C.D. 2018
                  :
Department of Human Services,    :
         Respondent    :

## O R D E R

**AND NOW**, this 8th day of March, 2019, the order of the Department of Human Services, Bureau of Hearings and Appeals, is **REVERSED,** and this matter is **REMANDED** to the Department of Human Services for further proceedings consistent with the foregoing opinion. Jurisdiction is relinquished.

 

_____
ROBERT SIMPSON, Judge