SCHOOL DISTRICT OF
PHILADELPHIA,
Petitioner

v.

WORKERS' COMPENSATION
APPEAL BOARD (HILTON),
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 4, 2013.
Decided Jan. 7, 2014.

Erica M. Burry, Media, for petitioner.

Paul M. Della Franco, Philadelphia, for respondent Shirley Hilton.

BEFORE: LEADBETTER, Judge, and LEAVITT, Judge, and COVEY, Judge.

OPINION BY Judge LEADBETTER.

Employer, the School District of Philadelphia, petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed in part and reversed in part an order of a Workers' Compensation Judge (WCJ). The Board affirmed that part of the WCJ's order granting the claim petition of Claimant, Shirley Hilton, as of March 3, 2009, and reversed that part of the order suspending her benefits as of September 30, 2009, in the absence of evidence that 1) Employer provided her with a Notice of Ability to Return to Work pursuant to Section 306(b)(3) of the Workers' Compensation Act (Act);[1] and that 2) a job was available to her. We affirm the Board to the extent that it affirmed the WCJ's grant of the claim petition and reverse it to the extent that it reversed the WCJ's suspension of benefits. Claimant was entitled to benefits only for the closed period of March 3, 2009 to September 30, 2009.

Claimant worked as a second-grade teacher for Employer at the Frances D. Pastorius Elementary School from November 24, 2008 to March 3, 2009. On March 3rd, she suffered heart palpitations, headaches, dizziness and nausea as a result of a particularly difficult day with her challenging classroom. Later that afternoon, Claimant went to a regularly scheduled appointment with Wilfreta Baugh, M.D., who had treated her for some time. As a result, someone from Dr. Baugh's office telephoned and advised the elementary

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 512(3). Section 306(b)(3) was added by the Act of June 24, 1996, P.L. 350 (Act 57).

school that Claimant would not be returning due to the school's overly stressful environment. Subsequently, Claimant treated with Employer's work panel physician, Dr. Frank Burke, who "made her return to work to her regular-duty job at the Pastorius [S]chool in May of 2009." WCJ's Finding of Fact No. 11. Claimant, however, worked for only four days in May 2009 and "received no other pay after March 3, 2009." Id. On May 29, 2009, Employer issued a Notice of Compensation Denial, rejecting Claimant's claim that she suffered a work-related injury due to excessive stress.

In June 2009, Employer re-assigned Claimant to teach at the Jay Cooke Elementary School. Claimant characterized Cooke as the opposite of Pastorius, quiet and with "excellent teaching . . . going on." WCJ's Finding of Fact No. 10. Although Claimant met with Cooke's principal and toured the school, she testified that she did not begin in September at Cooke because she was still under treatment for the job-related stress from Pastorius. Id. In October 2009, Claimant filed a claim petition alleging that, due to stress from an abnormal working environment, she sustained the following work-related injuries on March 3, 2009: vocal cord injury, aggravation of pre-existing lupus and heart murmur. Alleging total disability, she requested payment for medical bills and the loss of wages from March 3, 2009 to May 21, 2009, and from May 28, 2009 into the future.

The WCJ granted the claim petition for the closed period of March 3, 2009 to September 30, 2009. The WCJ accepted as credible Claimant's testimony that there were serious behavioral problems at Pastorius and that those problems caused the conditions that she experienced on March 3rd. In addition, the WCJ accepted as credible the testimony of Dr. Baugh that

1) Claimant sustained totally disabling work injuries to her vocal cord in the nature of muscle tension dysphonia from voice overuse and an exacerbation of her pre-existing lupus; and that 2) she would have been of no "benefit teaching the way she was in March, 2009." WCJ's Finding of Fact No. 40. The WCJ, however, suspended compensation as of September 30, 2009, when the job at Cooke would have been available, finding as follows:

41. Dr. Baugh did not testify that Claimant's muscle tension dysphonia from voice overuse, the exacerbation of her lupus, or her condition in general disabled her from working as a teacher, other than in a room with second graders who have behavioral problems such as at the Pastorius [S]chool. Dr. Baugh did not testify that as of September, 2009 or any other time, Claimant was not able to teach at the Jay Cooke School. Claimant's testimony is credible that the conditions at the Jay Cooke School are not like her second grade class at Pastorius. She went on a complete tour of the school. It was the opposite of where she had been teaching. It was very quiet and excellent teaching was going on. She was assigned to teach at the Jay Cooke School starting in September of 2009. Therefore, as of September 2009, work was available to Claimant which she was capable of performing, despite her work injuries.

WCJ's Finding of Fact No. 41. On appeal, the Board affirmed that part of the WCJ's decision granting the claim petition and reversed that part of the decision suspending Claimant's benefits as of September 30, 2009. Employer's timely appeal to this Court followed.

In claim petition proceedings, the claimant bears the burden of establishing his or her right to compensation and all of the

elements necessary to support an award of benefits, including a causal relationship between a work-related incident and the alleged disability and the duration and extent of the disability alleged. *Rife v. Workers' Comp. Appeal Bd. (Whitetail Ski Co.)*, 812 A.2d 750, 754–55 (Pa.Cmwlth. 2002). The initial burden, therefore, is on the claimant to establish a loss of earnings from a work-related injury. *Second Breath v. Workers' Comp. Appeal Bd. (Gurski)*, 799 A.2d 892, 900 (Pa.Cmwlth. 2002). In that regard, "[t]he term 'disability' is synonymous with an employee's loss of earning power." *N. Pittsburgh Drywall Co., Inc. v. Workers' Comp. Appeal Bd. (Owen)*, 59 A.3d 30, 37 (Pa.Cmwlth.2013) (citation omitted).

Employer argues that Claimant failed to meet her burden, contending that Dr. Baugh was unqualified to testify as to the alleged exacerbation of Claimant's pre-existing lupus. Employer emphasizes that Dr. Baugh admitted that she is no longer board-certified in internal medicine and that she is not an expert in psychology, rheumatology, cardiology or otolaryngology. March 9, 2010 Deposition of Dr. Baugh (Baugh Dep.), Notes of Testimony (N.T.) at 6; Reproduced Record (R.R.) at 44a. Accordingly, Employer contends that the WCJ erred in relying upon Dr. Baugh's opinion because the doctor was legally incompetent to testify regarding a causal relationship between psychological stressors and the alleged exacerbation of Claimant's pre-existing lupus.

 In general, a physician is competent to testify as to specialized areas of medicine even though he or she is not a specialist or certified in those areas. *Marriott Corp. v. Workers' Comp. Appeal Bd. (Knechtel)*, 837 A.2d 623, 629 (Pa.Cmwlth.

2003). Objections to such testimony generally go to the weight of the evidence. *Kocher v. Workmen's Comp. Appeal Bd. (B.G. Coon Constr. Co.)*, 52 Pa.Cmwlth. 106, 415 A.2d 162, 163 (1980). In addition, it is well established that "greater credence may be given to the testimony of a treating physician than to a physician who examines simply to testify for litigation purposes." *D.P. "Herk" Zimmerman, Jr., Inc. v. Workmen's Comp. Appeal Bd. (Himes)*, 103 Pa.Cmwlth. 68, 519 A.2d 1077, 1080 (1987) (citation omitted).

 In the present case, we conclude that the WCJ did not err in relying upon Dr. Baugh's testimony regarding the exacerbation of Claimant's pre-existing lupus. Dr. Baugh had been Claimant's treating physician since 1994 and testified as to her familiarity with Claimant's base-line physical condition and any preexisting medical conditions. Baugh Dep., N.T. at 8–9; R.R. at 51a–52a. In fact, although another doctor had already diagnosed Claimant with lupus prior to 1994, Dr. Baugh had been treating Claimant for the condition since that time. Noting that Claimant had been in relatively good health before March 2009, Dr. Baugh opined that the stress Claimant experienced at Pastorius caused an exacerbation of her pre-existing lupus. *Id.* at 11, 14–15; R.R. at 54a, 57a–58a. In rendering her medical opinion, Dr. Baugh testified that, although the cause of lupus is unknown, it is "absolutely" accepted in the medical community that stress exacerbates it. *Id.* at 14–15; R.R. 57a–58a.

In concluding that the WCJ did not err in relying on Dr. Baugh's expert opinion, we note that the WCJ rejected certain portions of her testimony in lieu of testimony from other medical witnesses.[2] In other words, the WCJ, acting within her

---

2. For example, the WCJ rejected as not credible Dr. Baugh's testimony that Claimant's work duties caused an exacerbation of her hypertension and her pre-existing fibromyalgia. WCJ's Findings of Fact Nos. 38 and 39.

province, considered and weighed the testimony of all of the doctors who testified. *Gurski*, 799 A.2d at 899 (WCJ free to accept or to reject, in whole or in part, the testimony of any witness, including a medical expert.) In addition, although Dr. Baugh admitted that she refers her patients to specialists when necessary, her competency to testify as an adult primary-care physician was not challenged.[3] Accordingly, noting that Dr. Baugh's credentials primarily go to the weight of her testimony, we conclude that the WCJ's finding regarding the exacerbation of Claimant's pre-existing lupus is supported by substantial evidence of record and, therefore, binding on appeal. Having determined that Claimant established a basis for her claim petition, at least to the extent of establishing March 3, 2009 work injuries, we turn to considering whether the Board erred in reversing the WCJ's suspension of Claimant's benefits as of September 30, 2009.

■ As the WCJ determined, Dr. Baugh opined that Claimant was not generally disabled from working as a teacher, as long as she did not work somewhere like Pastorius School. WCJ's Finding of Fact No. 41. In that regard, Dr. Baugh testified as follows:

Q. Would you place her—is she capable of returning to any work at this point?

A. I'm sure she is. I mean even she, herself, claims that she would like to go back to teaching in a less stressful environment. It's something that she enjoyed doing and she did it full time at some point in the remote past. And she wants to do this now. She wants to go back to work but not under those circumstances.

\* \* \*

Q. What is your prognosis for [Claimant] at this point?

A. I think her prognosis is good as long as she stays out of those kind [sic] of environments.

Baugh Dep., N.T. at 19; R.R. at 62a. In addition, in response to the specific question as to whether Claimant could return to work as a teacher, Dr. Baugh responded yes, but not in that environment. *Id.* at 34; R.R. at 77a.

Accordingly, on the basis of the above substantial evidence of record, credited by the WCJ, we agree that Claimant established disability only until September 30, 2009, when the job at Cooke was available. Finally, we turn to determining whether Employer was required to provide Claimant with a Notice of Ability to Return to Work during the time period after it issued a Notice of Compensation Denial but before Claimant filed a claim petition.

Section 306(b)(3) of the Act, 77 P.S. § 512(3), which outlines an employer's duty to provide an employee with a Notice of Ability to Return to Work, provides as follows:

(3) If the insurer receives medical evidence that the claimant is able to return to work in any capacity, then the insurer must provide prompt written notice, on a form prescribed by the department, to the claimant, which states all of the following:

(i) The nature of the employe's physical condition or change of condition.

(ii) That the employe has an obligation to look for available employment.

---

**3.** Dr. Baugh testified that she graduated from Jefferson Medical College and that she received her license to practice medicine in 1980. She indicated that she had been board-certified in internal medicine, but chose not to renew that certification in 2009. Baugh Dep., N.T. at 5–6; R.R. at 48a–49a.

(iii) That proof of available employment opportunities may jeopardize the employe's right to receipt of ongoing benefits.

(iv) That the employe has the right to consult with an attorney in order to obtain evidence to challenge the insurer's contentions.

■ By way of background, we note that the legislature created the notice requirement in Act 57 to be used as part of the earning power assessment process.[4] Specifically, the notice is required when an employer seeks to change a claimant's status quo to partial disability by modification or suspension of payments on the basis of medical evidence. *Struthers Wells v. Workers' Comp. Appeal Bd. (Skinner)*, 990 A.2d 176, 178 (Pa.Cmwlth.2010). Further, "[t]he clear purpose of Section 306(b)(3) is to require the employer to share new medical information about a claimant's physical capacity to work and its possible impact on *existing benefits*." *Id.* at 178 (emphasis added) [quoting *Burrell v. Workers' Comp. Appeal Bd. (Phila. Gas Works)*, 849 A.2d 1282, 1286 (Pa.Cmwlth.2004).] Finally, as we recognized in several unreported opinions: "Clearly Section 306(b)(3) of the Act presumes that the injury has caused a disability, a claim has been acknowledged as compensable and that the employer seeks to reduce its existing liability by decreasing the amount of benefits it has to pay." *Zyskowski v. Workers' Comp. Appeal Bd. (Allied Services)*, 2013 WL 3960967 (Pa.Cmwlth., No. 1665 CD.2012,

filed February 26, 2013), Slip Op. at 14 [quoting *King v. Workers' Comp. Appeal Bd. (Monroe Muffler & Brakes)*, 2010 WL 9513077 (Pa.Cmwlth., No. 1582 CD.2009, filed June 29, 2010), Slip Op. at 10.]

■ In the present case, Employer argues that none of the prerequisites for issuance of a notice were present in that its re-assignment of Claimant to a less stressful school was not based on a change in her medical condition, she was not receiving benefits at the time of the job offer and no litigation was taking place. Accordingly, it maintains that the main reason for issuance of a Notice of Ability to Return to Work, the need to protect a claimant from a haphazard suspension of benefits without proper notice, was not present. We agree.

■ Claimant was not receiving benefits and had not yet filed a claim petition at the time that she maintains Employer should have provided her with the notice. In fact, Employer had filed a Notice of Compensation Denial. The only notable event between the alleged March 2009 work injury and the subsequent June 2009 job re-assignment to Cooke was Claimant's unsuccessful return to her regular-duty job at Pastorius in May 2009 at the behest of Employer's panel physician. Notwithstanding Claimant's unilateral decision not to continue her second run at Pastorius, we conclude that Employer was not required to provide Claimant with a Notice

---

4. The history of the notice requirement is as follows:

The introduction of the earning power analysis was prompted by a desire to replace the *Kachinski* [*v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987)] regime, along with its highly technical requirements, with a more efficient and less expensive form of partial disability determination. Mindful that implementation of the earning power method would eliminate use of the *Kachinski* "job offer letter," which had become the standard method for notifying the injured worker that he or she had been declared medically capable of returning to the work force, the legislature developed the Notice of Ability form to serve as a substitute means of making that disclosure. 8 West's Pa. Practice, Workers' Compensation, § 21.5 at 665 (2008).

of Ability to Return to Work during what counsel for Claimant characterized as a "claim petition setting."[5] The notice is part of the earning power assessment process and is required when an employer seeks to *change* a claimant's status quo to partial disability by modification or suspension of payments on the basis of medical evidence. *Burrell,* 849 A.2d at 1286. Here, in the claim petition, the burden was on Claimant to show the duration of her disability, and she simply did not establish that it continued beyond September 30th. Accordingly, the requirement for issuance of the notice was not triggered.

Having determined that Claimant established her claim petition only for the closed period of March 3, 2009 to September 30, 2009, and that Employer had no duty to issue a notice under the facts of this case, we affirm the Board's decision to the extent that it affirmed the WCJ's grant of the claim petition and reverse it to the extent that it reversed the WCJ's suspension of benefits.

### ORDER

AND NOW, this 7th day of January, 2014, the order of the Workers' Compensation Appeal Board is AFFIRMED to the extent that it affirmed the WCJ's grant of the claim petition and REVERSED to the extent that it reversed the WCJ's suspension of benefits as of September 30, 2009.