IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sandra Carter-Zimmitt,                    :
                Petitioner       :
                                           :
        v.                                       :    No. 1597 C.D. 2022
                                           :    Submitted: August 9, 2024
City of Philadelphia (Workers'            :
Compensation Appeal Board),               :
                Respondent       :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE STACY WALLACE, Judge
               HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT                    FILED:  September 10, 2024

        Sandra Carter-Zimmitt (Claimant), *pro se*, petitions for this Court's review of an adjudication of the Workers' Compensation Appeal Board (Board) that granted the City of Philadelphia's (Employer) termination petition.  In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ) that Employer's expert established that Claimant was fully recovered from her work injuries.  Claimant argues that the WCJ erred in rejecting the opinion of her expert because he was her treating physician.  We affirm.

        Claimant, a licensed registered nurse, was employed by the City of Philadelphia Health Department.  On December 19, 2018, Claimant was injured in the course and scope of her employment, sustaining contusions to her lower back and left wrist.  On May 14, 2020, the WCJ expanded the description of Claimant's injury to include an aggravation of (i) an underlying lumbar spondylosis and (ii) a gluteus medius tendon tear.

On June 18, 2020, Employer filed a termination petition alleging that Claimant had fully recovered from her work injury as of May 23, 2020. The petition was heard by a WCJ.

In support of its petition, Employer presented the deposition testimony of Dennis P. McHugh, D.O., who is board certified in orthopedic surgery. On May 22, 2020, Dr. McHugh conducted an independent medical examination (IME) of Claimant, in which he obtained Claimant's history of her work injury; did a physical examination of Claimant; and reviewed Claimant's medical records.

Claimant told Dr. McHugh that on December 19, 2018, while boxing up the office for an upcoming move, she began experiencing musculoskeletal pains in her neck, low back, both hips, and left hand. She was treated at Concentra and then referred to the Rothman Institute, where she was seen by Jeremy Simon, M.D. He ordered a magnetic resonance imaging (MRI) test of her lumbar spine; prescribed a brace for her low back; and ordered physical therapy. Thereafter, she sought treatment at West Philadelphia Medical Center.

Dr. McHugh's examination of Claimant's neck revealed palpable tenderness on the left side of her neck but no muscle spasms, and her cervical range of motion appropriate. Claimant was able to shrug both shoulders, indicating that her trapezius muscles worked appropriately.

Dr. McHugh's examination of her lumbar spine revealed palpable tenderness on the right but without pain or muscle spasms. In an upright position, Claimant was able to flex forward but could not go farther than ten degrees due to pain. However, she was able to move more freely, without pain, when extending her back, bending side to side, and rotating.

Dr. McHugh did several tests for radiculopathy. They included straight leg raises in seated and supine positions. He did the Trendelenburg gait test, checking for weakness in the gluteus muscles. The tests were negative, and his examination of Claimant's hips revealed no palpable tenderness, impingement, or arthritis.

Examination of Claimant's left wrist and hand revealed no visible swelling and motion within normal limits with flexion and extension and moving the wrist side to side. Wrist tests included the Watson's and Shuck, the Finkelstein's, and the Jamar grip strength tester. All were negative.

Claimant's medical records included a 2019 MRI of Claimant's lumbar spine showing arthritis at multiple levels, most notably at the L5-S1 level. The 2019 MRI did not show a significant change from an August 2018 MRI. Concentra's intake report noted that Claimant presented with complaints about her low back, hips, and wrist, but there were no complaints about her neck. The records of Claimant's treatment from Dr. Simon between January 14, 2019, and April 12, 2019, reported lumbar radiculopathy, However, Dr. McHugh's tests did not support that diagnosis. Dr. Simon's records did not report any issues with Claimant's neck or hips. Finally, Dr. McHugh reviewed Claimant's chiropractic records from West Philadelphia Medical Center, between February 4, 2019, and December 30, 2019, which were the same for each visit, line for line.

Based on Claimant's history, her medical records, and his physical examination, Dr. McHugh opined that Claimant was fully recovered from her work injuries. Those injuries included a strain of her low back, strain of bilateral hips, and strain of the left wrist, as well as aggravation of underlying lumbar spondylosis and a gluteus medius tendon tear.

After the IME, Dr. McHugh testified that he reviewed additional medical records, including Claimant's August 13, 2018, lumbar MRI and her August 10, 2018, left hip MRI. These reports did not change his opinion that Claimant had fully recovered from her work injuries.

On cross-examination, Dr. McHugh acknowledged that he did not review Dr. Simon's records from September 2020, which were generated after Dr. McHugh's IME of May 22, 2020. He acknowledged that at the IME, Claimant reported right-sided low back pain radiating towards the left hip, the location of her work-related injury. She also reported having pain in the wrist, hand and fingers. However, Dr. McHugh explained that Claimant's subjective complaints were inconsistent with his physical examination and tests.

In opposition to the termination petition, Claimant testified in person before the WCJ. She stated that in her work as a registered nurse at Health Center 1, she completed intake forms, triaged patients, drew blood, and gave injections. On December 19, 2018, while moving heavy boxes, she injured her back and right hip.

Claimant testified that she had treated with Dr. Simon until February of 2021. She stopped because the physical therapy he prescribed was not helping her but "aggravating [her] situation." Notes of Testimony (N.T.), 10/27/2021, at 11; Supplemental Reproduced Record at 124a (S.R.R. __).[1] To help with her pain, she has been doing exercises at home.

Claimant testified that she is "still in pain." N.T. 13; S.R.R. 126a. She suffers pressure and pain while walking, which travels down her right hip and leg. Because of the pain, she has not returned to work. On cross-examination, Claimant

---

[1] The supplemental reproduced record does not follow PA.R.A.P. 2173, which requires that the pages of the record be numbered separately in Arabic figures followed by a small b, thus 1b, 2b, 3b, etc.

4

agreed that she has not received treatment for her work injuries in the last eight months, explaining that physical therapy did not help.

Claimant also presented the deposition testimony of Dr. Simon, who is board certified in pain management, physical medicine, and rehabilitation. Dr. Simon saw Claimant four times and testified that he first saw Claimant in 2019 for her complaint of "right side lower back pain, mid back pain, bilateral hip pain, and knee pain." Simon Depo. at 9-10; S.R.R. 45a-46a. When Dr. Simon saw Claimant on September 24, 2020, she still complained of bilateral hip and back pain, which radiated down her leg into her foot. Her pain increased with standing and walking, especially in her right buttock area. Claimant also had decreased sensation on the side of her foot, which corresponded to the S1 nerve on the right side. Dr. Simon's diagnosis was "pain aggravation of the underlying lumbar spondylosis" as well as lumber radiculopathy. Simon Depo. at 14; S.R.R. 50a.

At a visit on February 4, 2021, Claimant complained of "low back pain[] [and] ongoing lower back pain, and she stated that it was severe in the low back, sometimes in the neck and mid back too, but worse with activity." Simon Depo. at 15; S.R.R. 51a. His physical examination revealed that her left leg was fine, "but she had sort of pain-limited strength in the right lower extremity." *Id*. Claimant had pain with extension and flexion of the wrist, but her sensation was fine. Dr. Simon diagnosed Claimant with lumbar radiculopathy; a gluteus medias tear; and aggravation of underlying lumbar spondylosis. Dr. Simon opined that Claimant had not fully recovered from her work injury and was not capable of performing her pre-injury job duties.

On cross-examination, Dr. Simon agreed that the notes of his physical examinations of Claimant on September 24, 2020, and February 4, 2021, consisted

5

of five lines. Dr. Simon acknowledged that there is a test for a gluteus medias tear, but he did not perform it on Claimant. Dr. Simon further agreed that the straight leg raise is used to test for lumbar radiculopathy, but he did not perform that test in his post-IME examinations of Claimant. Dr. Simon stated that Claimant was supposed to follow-up with him in two months after the February 4, 2021, visit, but she did not.

The WCJ granted Employer's termination petition. In so doing, the WCJ credited Dr. McHugh's testimony over Dr. Simon's testimony, explaining that although Dr. Simon was Claimant's treating doctor, he had seen her four times, two of which took place after the IME in May 2020. Further, Dr. Simon's physical examinations were not detailed. Dr. McHugh performed a Trendelenburg gait test (for gluteus medius) and straight leg raise test (for lumbar radiculopathy), and they were negative. Although aware of these physical tests, Dr. Simon did not perform them at Claimant's visits of September 24, 2020, and February 4, 2021. Because of the numerous objective tests done by Dr. McHugh, the WCJ found his single examination superior to Dr. Simon's four exams. The WCJ accepted Dr. McHugh's opinion that Claimant was fully recovered from her December 19, 2018, work injuries and, as of May 22, 2020, capable of returning to work without restrictions or additional medical treatment.

Claimant appealed to the Board. Claimant argued that the WCJ erred in terminating her benefits because Dr. McHugh did not recognize the full extent of her work injuries, which rendered his opinion incompetent. The Board explained that Dr. McHugh testified that he was advised of Claimant's expanded work injuries, *i.e.*, the aggravation to her lumbar spine and gluteus medias tear. Accordingly, he authored an addendum to his report that acknowledged these additional injuries in

6

opining that Claimant was fully recovered from her work injuries. It was of no moment that Dr. McHugh was not aware of the full extent of Claimant's accepted work injuries at the time of the IME because he did tests at the IME that addressed the aggravation injuries. The Board concluded that Dr. McHugh's credited medical opinion was competent to support the WCJ's finding that Claimant had fully recovered from her work injuries.

In her appeal to this Court,[2] Claimant raises multiple issues, but they can be reduced into one for clarity.[3] Claimant argues that Employer did not establish that she has fully recovered from her work injury.

---

[2] This Court's review of the Board's adjudication determines whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated, or whether an error of law was committed. *Cytemp Specialty Steel v. Workers' Compensation Appeal Board (Crisman)*, 39 A.3d 1028, 1033 n.6 (Pa. Cmwlth. 2012).

[3] Claimant raises the following issues:

1. Did [Claimant] return to work to honor the prescribed modified duty as order by the Physician after the date of injury?

2. Was [Claimant] told there was no modified/ or light duty available and therefore fired?

3. What objective data proved that [Claimant's] work related disability had ceased?

4. Does Dr. McHugh have the authority to perform disability impairment ratings, to score percent's [sic] of disabilities, to determine the level of earning ability [Claimant] had?

5. What was [Claimant's] disability impairment rating?

6. Was Dr. McHugh just doing his job by saying the MAGIC WORDS "Claimant has fully recovered", from determined [d]isabilities?

7. How long would an office visit be to complete an exam of superior quality?

8. Did Danielle Coleman from [Human Resources] tell you they would not honor light duty?

9. Does it take a person between the ages of 60-65 longer to heal then [sic] a younger person?

"An employer seeking to terminate workers' compensation benefits bears the burden of proving either that the employee's disability has ceased, or that any current disability arises from a cause unrelated to the employee's work injury." *Campbell v. Workers' Compensation Appeal Board (Antietam Valley Animal Hospital)*, 705 A.2d 503, 506-07 (Pa. Cmwlth. 1998) (holding that termination was improper where the employer's expert did not rebut the claimant's credible complaints of ongoing pain and fatigue). "An employer may satisfy this burden by

10. Does 4 visits times, 1 30 minute new patient visit (3 visits 15-30 minutes) = less, than 1 new patient, (1 visit 15-30 minutes) + more superior physical examination?

11. Is it true that Dr. McHugh clarified that he authored his original IME report dated May 22[,] 2022, [s]tating he was unaware that [C]laimant's [notice of compensation payable (NCP)] had been amended to include aggravation injuries to Claimant Lumbar Spine Gluteus Medias Tendon.

12. Can the actual office detailed notes with the patient history and physical be provided?

13. Can the test Dr. McHugh performed be measured and determined different by another individual discretion?

14. Did [Claimant] being late for [her] appointment or presentation on the day of [her] appointment make Dr. McHugh prejudice toward [her] case?

15. When was it explained . . . that [Claimant] was there solely for an Independ[ent] Orthopedic evaluation and that no diagnosis would be render and no treatment option given?

16. When did [Claimant] understand and accept anything about [Dr. McHugh's] examination?

17. Did we have a conversation about Concentra?

18. Is there a tone of prejudices[] or dislike in Dr. McHugh Independ[ent] Orthopedic Evaluation?

19 Does not every human being have the right to life, liberty and the right of security of his person; protection from unlawful discrimination (Dignity) and the right to a healthy environment against Epidemic disease?

20. Did the President of the United States of America said, we were in a war with COVID 19 and also order everyone to stay home and help prevent the spread of COVID?

Claimant Brief at 7-9.

8

presenting unequivocal and competent medical evidence of the claimant's full recovery from [his] work-related injuries." *Paul v. Workers' Compensation Appeal Board (Integrated Health Services)*, 950 A.2d 1101, 1104 (Pa. Cmwlth. 2008).

This Court will not disturb a WCJ's findings if there is substantial evidence in the record to support the findings. "Substantial evidence is such relevant evidence which a reasonable mind might accept as adequate to support a finding." *Berardelli v. Workers' Compensation Appeal Board (Bureau of Personnel State Workmen's Insurance Fund)*, 578 A.2d 1016, 1018 (Pa. Cmwlth. 1990). In a substantial evidence review, this Court may not reweigh the evidence but must simply determine whether the WCJ's "findings have the requisite measure of support in the record" as a whole. *Bethenergy Mines, Incorporated v. Workers' Compensation Appeal Board (Skirpan)*, 612 A.2d 434, 437 (Pa. 1992). Additionally, "[the Court] must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced from the evidence." *A & J Builders, Inc. v. Workers' Compensation Appeal Board (Verdi),* 78 A.3d 1233, 1239 (Pa. Cmwlth. 2013). Finally, "it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *Lahr Mechanical v. Workers' Compensation Appeal Board (Floyd)*, 933 A.2d 1095, 1101 (Pa. Cmwlth. 2007) (quotation omitted).

Here, the WCJ accepted Dr. McHugh's opinion that Claimant was fully recovered from her accepted work injuries as of May 22, 2020, and required no additional treatment or work restrictions after that date. The WCJ credited Dr. McHugh's opinion because it was based on a physical examination that was more

thorough than that of Dr. Simon. Further, Dr. McHugh did numerous objective tests, and Dr. Simon did not.

Claimant asserts that the Board erred in affirming the WCJ's decision. First, Dr. Simon saw her four times, and Dr. McHugh saw her once. Second, Dr. McHugh did not "appear to remember the physical exam," and he seemed prejudiced towards older people, having noted her age. Claimant Brief at 11.

This Court has held that "greater credence may be given to the testimony of a treating physician than to a physician who examines simply to testify for litigation purposes." *Sloane v. Workers' Compensation Appeal Board (Children's Hospital of Philadelphia)*, 124 A.3d 778, 789 (Pa. Cmwlth. 2015) (quoting *School District of Philadelphia v. Workers' Compensation Appeal Boad (Hilton)*, 84 A.3d 372, 375 (Pa. Cmwlth. 2014)). "However, as this Court has also held, a WCJ is under no obligation to accept the opinion of the treating physician over the opinion of an IME expert retained by the employer." *Wall v. Workers' Compensation Appeal Board (Commonwealth of Pennsylvania)* (Pa. Cmwlth., No. 1573 C.D. 2017, filed May 31, 2018) (unreported), slip op. at 9.[4] This Court has "rejected the adoption of a 'treating physician's rule' found in other jurisdictions that would give deference to the testimony of the treating physician based on the ongoing relationship between the physician and patient." *Id*. at 10. Here, the WCJ found Dr. McHugh more credible than her treating physician and fully explained the reasons for that determination.

---

[4] *Wall* is an unreported decision that is not binding precedent but instead is considered by the Court for its persuasive value. 210 Pa. Code §69.414(a).

10

Claimant argues that the WCJ erred because Dr. McHugh did not remember the physical examination.[5] Dr. McHugh explained that each week he sees approximately 75 patients in the office, performs 8 to 10 surgeries, and conducts 2 IMEs. McHugh Depo. at 7, 30; S.R.R. 77a, 100a. Accordingly, Dr. McHugh relies upon the contemporaneous reports he prepares for each physical examination when deposed. In effect, Claimant challenges the weight given to Dr. McHugh's testimony by the WCJ. However, the Court may not reweigh the evidence or the credibility of witnesses, "but must 'simply determine whether the WCJ's findings have the requisite measure of support in the record as a whole.'" *County of Lehigh v. Moyer (Workers' Compensation Appeal Board)* (Pa. Cmwlth., No. 1343 C.D. 2020, filed December 13, 2021) (unreported) slip op. at 11 (quoting *Elk Mountain Ski Resort, Inc. v. Workers' Compensation Appeal Board (Tietz, deceased)*, 114 A.3d 27, 32 n.5 (Pa. Cmwlth. 2015)). We reject Claimant's argument that the WCJ erred in crediting Dr. McHugh's testimony for the stated reason that he referred to his written reports in his testimony.

Finally, Dr. McHugh's comment on Claimant's age is of no moment. The IME included information on her age, height, and weight, which Dr. McHugh noted in his report. He did not base his findings or opinion on Claimant's age. We reject Claimant's argument in this regard.

---

[5] Claimant does not identify any evidence in the record to support her argument that Dr. McHugh did not remember the physical examination. Claimant may be relying on Dr. McHugh's statement on cross-examination that he did not have any independent recollection of Claimant and was testifying pursuant to his reports. McHugh Depo. at 32; S.R.R. 103a.

For these reasons, we hold that the Board did not err in affirming the WCJ's grant of Employer's termination petition. Accordingly, we affirm the Board's September 27, 2022, adjudication.

_____
MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sandra Carter-Zimmitt,         :
           Petitioner         :
                              :
           v.                  :        No. 1597 C.D. 2022
                              :
City of Philadelphia (Workers'    :
Compensation Appeal Board),     :
           Respondent     :

## **O R D E R**

AND NOW, this 10th day of September, 2024, the adjudication of the Workers' Compensation Appeal Board in the above-captioned matter, dated September 27, 2022, is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita